The case for today is submitted on the briefs, and so we will move on to Saxon v. Southwest Airlines Company, and we should have Ms. Bennett and Ms. Siebert. Good morning, Your Honor. Looks like we have everybody. Okay, you may proceed, Ms. Bennett. May it please the Court. The Supreme Court has repeatedly held that workers who load and unload interstate cargo are engaged in commerce. The Court said it before the Federal Arbitration Act was passed and has continued to say it ever since. Most relevant is the Birch decision, in which the year before the Federal Arbitration Act was passed, the Supreme Court said that railroad employees who load and unload interstate cargo are engaged in commerce. And this shows us what the phrase engaged in commerce meant at the time the Federal Arbitration Act was passed, and it does so specifically in the context of transportation workers. And since Birch, the Supreme Court has continued to repeat the same thing. I'm sorry, Judge Barrett, I think you might be muted. Okay, I'm sorry about that. So, I'm going to ask you a question about the limiting principle of your position. Sure. So, at places in your brief, it seems like you're arguing that anyone who works for a transportation company, like any Southwest worker, would fall within the exemption. Is that your position? No, Your Honor. I think we should adopt what the Supreme Court said in the years leading up to the FAA, and that was anybody who is practically a part of the transportation itself. And that's actually a pretty narrow category. So, that would include people who load and unload cargo, because the Supreme Court has repeatedly said they are part of the transportation, or people who, for example, repair planes. The Supreme Court has said those people are part of the transportation, but it wouldn't include people who are further removed. But not in this context, right? You've cited cases in other contexts where the court is defining who's part of the transportation when we're talking about railroad workers or seamen. But in this context, there isn't a lot of controlling authority. There's a Fifth Circuit case about a rustabout. But what, in this context, can you point to that establishes that principle with respect to railroad workers and seamen? You mean in the context of the Federal Arbitration Act itself? Yes. There haven't been any Supreme Court cases that dealt with this question in the context of the Federal Arbitration Act itself, and very few cases in general. So, when you look to the Federal Employers' Liability Act cases, it had the exact same jurisdictional requirement. And there are cases interpreting that jurisdictional requirement from the years before the Federal Arbitration Act was passed. And that jurisdictional requirement in the FILA cases had to be interpreted narrowly because Congress's Commerce Clause power was interpreted narrowly at the time. And so, looking at those cases in that context, it gives us a sense of what those words meant when the Federal Arbitration Act was passed. And what Circuit City says is that the Federal Arbitration Act, the phrase engaged in commerce in the Federal Arbitration Act, doesn't have a unique meaning. What Circuit City says is that it means the same thing those words mean in other contexts and in every context. And when the Supreme Court has examined what these words mean, the Court has held that loading and unloading interstate cargo is being engaged in commerce. You know, it said that in FERCH, it said that in Puget Sound, which was a tax case, and it was about loading and unloading ship. It said it in International Longshoremen's. And the reason the Supreme Court keeps holding this in different contexts is because it holds that interstate – rather, loading and unloading is interstate transportation. So, can I ask you how far loading and unloading goes? So, we do see this Fifth Circuit decision in Eastus where the person at the airline counter takes the bags from the customer and throws them onto the conveyor belt, at which point they presumably move out to the airplane. Is that person participating in loading and unloading or not? And I think that's a much closer question than the question here. There is a previous – Eastus actually conflicts with an earlier Fifth Circuit case called Atlanta Terminal that we cite in our brief. And Atlanta Terminal says once the baggage gets to – once it's in the custody of the transportation company, it is in transportation. It is in interstate transportation. But this court doesn't need to go that far here. Here, all we know is that the Supreme Court has repeatedly said that loading and unloading interstate cargo counts. So, that means in your mind, you're really just talking about physically taking the box or the bag or whatever it is and putting it into the hold of the airplane. Yeah, I think that is enough to resolve this case. And that's – clearly, the Supreme Court has repeatedly said that that counts. But not in this context, right? It's difficult to transport it entirely from other statutes. It's a difficult question. We haven't – there's the GrubHub case that's working its way up in our circuit, but we haven't dealt with this question. Other courts have had to decide, you know, are coastal workers or, you know, as Judge Wood said, you know, in the – other kinds of airline workers. So, I mean, it's important to get it right, and we can't just transport from other statutes, right? Well, I'm actually not sure about that because, again, Circuit City says that this phrase means the same thing as it does in other contexts where it's used. And New Prime de Oliveira also says we look at what the words meant at the time. And if you look at what the words meant at the time, FILA had the same jurisdictional phrase, and it had lots of cases interpreting it. And it repeatedly said, you know, at the time, this phrase means people who are practically a part of interstate transportation. And specifically that that includes people who are loading and unloading cargo. So, I don't think it actually needs a unique meaning in this context. And I think giving it a unique meaning in this context would actually conflict with what Circuit City says the way the Federal Arbitration Act should be interpreted. It also – giving it the same meaning as it had – as those words had at the time is supported by the statute's exemption for railroad employees and seamen. And we know that both of those groups of people loaded and unloaded cargo at the time. You know, the Transportation Act of 1920, which is the dispute resolution statute that governed railroad employees at the time, gave the Railway Labor Board authority. And, in fact, the board used that authority to resolve disputes between railroads and people who loaded and unloaded cargo. Ms. Bennett, your opponent argues that if we were to adopt your view, there would be a gap because Ms. Saxon, at least, because of her supervisory role, I assume, is not under a collective bargaining agreement. And one of the things that other courts have been looking at is to say, well, we have this substitute system of dispute resolution for railroad workers under collective bargaining agreements and whatever. But your system would leave this sort of hole in the arrangements. What's your response? There are two answers to that, Your Honor. First, the Railway Labor Act does cover workers that load and unload interstate cargo. So it doesn't cover Ms. Saxon in particular, but there can't be a unique interpretation of the statute for Ms. Saxon. So for workers whom it does cover, if the FAA does not exempt workers who load and unload interstate cargo, we know that that will cause conflicts with the Railway Labor Act because some chunk of those workers are unionized and are covered under that statute. We also know that Congress didn't mean to cover everyone, either with the Federal Arbitration Act or some other dispute resolution statute. And we know that from the text of the exemption, because the only dispute resolution statutes in effect when the Federal Arbitration Act was passed covered railroad workers and seamen. And nevertheless, Congress also exempted any other class of workers engaged in commerce, which means Congress knew at the time it passed the act that there would be a gap. It intentionally made this gap. And the reason for that is to leave these workers open to future regulation and future intervention. So, for example, if you look at the Gadsby article that's cited in our opening brief, it talks about the Shotman strike, which the Federal Arbitration Act was passed just on the heels of. And that strike, Congress got involved, the Railway Labor Board got involved, and the President got involved. And so leaving these kinds of workers open for that kind of spur of the moment on the fly intervention is precisely why they're exempted here. It's not because Congress needed to ensure that all of the interlocking dispute resolution statutes apply to everyone. How should we factor in what the Fifth Circuit found or relied on in Eastus and what the District Court relied on here? That Section 1 does not apply to longshoremen, if you look at the Jones Act. And longshoremen were the one who were loading and unloading the ships for the seamen. How would that factor or should that factor into our analysis? There are a few ways. The first is that actually at the time the statute was passed and for decades afterwards, longshoremen were considered seamen. If you look at the Haverty case in 1926, for example, it specifically says longshoremen for the Jones Act are seamen. The second answer to that is that members of the crew of people who were definitely seamen, not longshoremen, did load and unload cargo. The Minna case, the Walsh Brothers case, the Wallander case, they all say that even members of the crew were indisputably seamen who loaded and unloaded cargo. And the third answer to that is that the Supreme Court said in Puget Sound that longshoremen are related to commerce in the same way that seamen are. In other words, loading and unloading cargo is commerce, regardless of whether you do it on a boat or whether you do it on land. And we know that railroad employees also loaded and unloaded cargo. So even if seamen didn't, although we do know that they did, but even if they didn't, that can't be the link between seamen and railroad employees. It can't be because you can't construe the Supreme Court says you can't construe the phrase more narrowly than the terms of inches apart. And railroad employees, we know loaded and unloaded cargo, and we know that seamen did as well. All right, I think we'll have to stop there. You're over your time a bit, but we'll see. I may give you a little for rebuttal. So, Miss Seabert. Thank you. May it please the court. The judgment below should be affirmed. Appellant Latrice Saxon is a non-union supervisory employee of Southwest Airlines Company whose employment-related claims arose out of her work as a ramp agent supervisor at Midway Airport. Her duties include primarily supervising union-represented ramp agents who load and unload passenger baggage and some goods on Southwest Airplanes. Don't we have her affidavit, though, that says even though that may have been the formal job description, she spent three days out of five each week physically loading and unloading? And the district court found below, Judge Wood, that Miss Saxon also loads and unloads some passenger baggage, although the extent to which she did that was disputed by the parties and was limited by the terms of the collective bargaining agreements. How important is that to your argument? I mean, do we need to worry about whether it was, you know, 60% of her time, as she says, or 20% of her time, or some minimal percentage? I mean, surely at this stage we have to take her factual estimate, don't we? Sure. But it's our position that the fact that she unloads or loads passenger baggage and some goods does not make her within the Section 1 exemption. Why not? And that's based on, well, because she is not actually engaged in the transportation of goods in interstate commerce. So your position is that across the board, then, if I just want to understand it, across the board, no one who loads or unloads, whether it's into an airplane, whether it's into a rail car, whether it's onto a ship, no one who loads or unloads is, quote, engaged in commerce. No one who loads or unloads is a transportation worker engaged in commerce within the meaning of the Section 1 exemption. And so, yes, to answer the question more directly. Isn't that in conflict with the understanding in the 1920s when the FAA was written? Well, the issue with applying what is essentially the new prime Olivera analysis here is that new prime wasn't considering the term engaged in commerce in the Section 1 exemption. If Your Honor recalls, the situation in new prime and the term that was being interpreted was in the more broader provision of the Section 1 exemption, not the residual clause. It was about what's a contract of employment, whether someone's an employee. What Circuit City has said, and which new prime did not touch, because as new prime notes, the parties had stipulated that the truck driver at issue was engaged in interstate commerce within the meaning of Section 1. It did not touch that. What new prime then looked at was the term employment contracts. If you look to Circuit City, however, what Circuit City says is that the term engaged in commerce is a term of art, is a phrase of art. And if new prime, Circuit City actually declined to apply the 1925 meaning of the term engaged in commerce, stating that the 1925 meaning did not provide a sufficient basis for a court to adopt an expansive construction of the Section 1 exclusion that goes beyond the meaning of the words that Congress actually used. Also in that opinion, Circuit City rejected the attempt to equate the term involving or relating to commerce with engaged in commerce for the simple reason that the court said those terms are not coterminous. That was also the same thing in Allied Bruce, where the Supreme Court held that the term involved is subsumed or involves, is subsumed within the term involving. What Ms. Saxon asked the court to do is to use pre-1925 case law, which your honors have already noted does not involve the Federal Arbitration Act. It involves FELA and 1900s dictionary definitions in an attempt to convince this court that the phrase engaged in commerce means, it really means involves or take part. However, Circuit City held that the complete phrase engaged in commerce is a term of art, indicating a limited assertion of federal jurisdiction. Let me just say, Ms. Siebert, that distinction exists in many areas. If you're in commerce, then there's a much more direct notion of crossing state lines, being part of the transportation of goods or services or people. If you are simply affecting commerce or involving commerce, then it's something, the meaning of which changed dramatically during the 1930s and has remained quite broad. The Supreme Court in Circuit City looks at the engaged in commerce language and says, that's the more narrow one. You've really got to be one of the participants in the actual interstate commerce. I don't know what principle tells us where to draw that line, whether it's you have to climb into the pilot seat and fly the airplane, or could you be a flight attendant, or are you the person who helps stop the wheels when it comes up to the terminal, or are you a loader or unloader? We need some way of drawing this line. I think what has been noted today and what's important to keep in mind is that there are enumerated occupations. They're not enumerated industries. Eastus makes this point fairly well. Which is why we wouldn't say anybody who works for, at least I wouldn't say anybody who works for a rail company is engaged in commerce. There's probably somebody sitting there as a receptionist in an office, and they're not in commerce. But we're talking about whether the particular job of loading and unloading the cargo is actually so much, so close, so necessary. You don't have commerce until the cargo's in the plane. So why isn't that part of it? Sure. As Eastus has noted, and even in Palco, merely loading and unloading goods does not make one engaged in interstate commerce within the meaning of the Section 112. Well, Eastus says that, but did they give a reason? And I'm concerned about the analogy to the longshoreman, because the special statute wasn't passed until years later. Well, I think the distinction that was made that Judge Dowd made below, which acknowledges Circuit City's at least recognition of the majority appellate court opinion that one be actively engaged in commerce, is that one needs to manipulate the channels of commerce, and merely handling a package or baggage is not, under the Circuit City framework, specific to put one within the residual clause, which has to be narrowly interpreted in light of the preceding definitions of seamen and railroad workers. The Railway Labor Act has applied to airlines for years. Had Congress wanted to include airline workers or some subset within those broader terms, along with railroad workers or seamen, it could have done so. But that argument is too broad, because Congress clearly did that. If a union of airline workers has a problem under a collective bargaining agreement, it goes to RLA arbitration. It's a minor, quote, unquote, minor dispute. So Congress has made that quite clear. So I'm worried that maybe you're proving too much by this argument. So actually, if you look at, excuse me, Judge. Go ahead. If you look at Ms. Saxon, she's no different than any other employee in any other industry. And Southwest is no different than any other employer in any other industry. We're a non-union represented employee, and Southwest can enter into an individual arbitration agreement. And the only way that Ms. Saxon avoids that agreement is by either breaching it or getting a court to determine that she falls within an exemption that's supposed to be narrowly construed. It's also supposed to be construed in light of the purpose of the FAA, the Federal Arbitration Act itself, which is the second part of the service scheme. But New Crime tells us that the FAA is the product, like most statutes, of compromise. And so we're trying to figure out, actually, how the FAA would treat somebody who's loading and unloading cargo, whether a union member, whether a supervisor with temporary duties. So Congress decides in the FAA, as New Crime says, that some people are out. Ms. Seibert, I'd like to ask you what your line is. Is it someone who actually crosses the state line? And so then you would rule out, say, the Amazon last leg driver? Or is it someone who physically drives the vehicle and is, therefore, on the channels of interstate commerce, even if only on an interstate leg? That's a good question. I think the line could be drawn two ways. First, under this court's decision in Keenestra, there was certainly considerable weight put on the fact as to whether the worker actually crossed state lines. And thus, was engaged in interstate commerce. Certainly, Ms. Saxon concedes that she does not do that. Actually, she concedes she doesn't even transport goods. The second way would be under the 11th Circuit or 3rd Circuit or even 2nd Circuit authority that says, let's look at whether they're actively engaged in interstate commerce. Are they manipulating the channels of commerce? As Judge Dow noted, that could be the employee who actually directs the routes that the pilots fly and actually directs which goods they deliver. That's similar. But the 3rd Circuit goes further, doesn't it? Doesn't the 3rd Circuit also employ the test that if the work is so closely related thereto as to be in practical effect part of it? And if so, wouldn't that cover loading packages that are going to cross state line? I think the concern there is then you're replacing the word relating with the term engaged in interstate commerce to interpret what the duties are. And that's not what the Supreme Court tells us to do. It can't be anything related to commerce. As was noted earlier by one of the judges, where do you draw the line then? Are the ticket agents? Because they are, and the 5th Circuit has held, that they load and unload baggage. Those are the folks that take the stroller at the gate and put it onto the airplane. Why should they not also be relating to interstate commerce? It's engaged in interstate commerce. That term has a meaning. It has consistently been interpreted by the appellate courts since Circuit City to exclude those who merely handle cargo. And that's all we're saying here. We only have to decide this as to Ms. Saxon, and we only should decide this as to Ms. Saxon. Okay. I think we need to wrap up now, Ms. Hiebert, since you're over time. If you just want a concluding sentence. All right. Thanks very much. And because we went over, I'll give you one final minute, Ms. Bennett. Great. Thank you. And I'll just start where we left off, which is what is the principle here? Southwest has proposed no line. You know, if the line is crossing state lines, that actually conflicts with century of Supreme Court precedent that says commerce does not require crossing state lines in a variety of different contexts. It would mean that if a railroad shipped goods from one state to another but had multiple legs, some of which were in a single state, that would no longer be commerce. And the Supreme Court said that's not right. And it also wouldn't prevent the line drawing problem. If all the standard is you physically cross state lines, a pizza delivery driver in D.C. or Chicago would be engaged in interstate commerce. If the line is instead being a part of interstate transportation, practically a part of interstate transportation, that's what the Supreme Court has previously said, and that's a fairly narrow line that would exclude, for example, the food service people at the airport. But it would include loading and unloading interstate cargo. And, again, the reason for that is, for example, in Joseph, the Supreme Court has said loading and unloading interstate cargo is not just preliminary to, is an essential part of interstate transportation. So even if we take Southwest's second proposed statement, actually engaged in interstate commerce, people who load and unload cargo are actually engaged in interstate commerce. That's what the Supreme Court has repeatedly said, because loading and unloading is interstate commerce. Okay. I think we'll have to stop there. Thank you very much. Thanks to both counsel. The court will take the case under advisement.